## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| NATHAN C. SILVA, Derivatively on Behalf of Nominal Defendant ON SEMICONDUCTOR CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> HASSANE EL-KHOURY, ALAN CAMPBELL, ATSUSHI ABE, PAUL A. MASCARENAS, CHRISTINE YAN, THOMAS L. DEITRICH, SUSAN K. CARTER, GREGORY WATERS, BRUCE E. KIDDOO, CHRISTINA LAMPE-ÖNNERUD, THAD TRENT, and SIMON KEETON, <br><br> Defendants, <br><br> and <br><br> ON SEMICONDUCTOR CORPORATION, <br><br> Nominal Defendant. | Case No. _____ <br><br><br> **DEMAND FOR JURY TRIAL** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Nathan C. Silva ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant ON Semiconductor Corporation ("Onsemi" or the "Company"), against certain current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Onsemi, legal filings, news reports, securities analysts' reports about the Company, the securities class action *Hubacek v. On Semiconductor Corporation, et al.,* Case No. 1:23-cv-01429 (D. Del.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by Plaintiff on behalf of Onsemi against certain of its officers and current and former members of the Board (the "Individual Defendants")[1] for breaches of their fiduciary duties between at least May 1, 2023, and October 27, 2023 (the "Relevant Period"), and violations of federal securities laws, as set forth below.

2.      Onsemi is a global provider of semiconductor components catering to a wide range of electronic devices and offers solutions in power and sensing as well as automotive

---

[1] The Individual Defendants are Hassane El-Khoury, Alan Campbell, Atsushi Abe, Paul A. Mascarenas, Christine Yan, Thomas L. Deitrich, Susan K. Carter, Gregory Waters, Bruce E. Kiddoo, Christina Lampe-Önnerud, Thad Trent, and Simon Keeton who are sometimes referred to herein by their last name. "Defendants" means Onsemi and the Individual Defendants.

electrification. Key to the Company's success is its strategic commitment to advancing, producing, and marketing products featuring silicon carbide ("SiC"). Onsemi's SiC offerings play a crucial role in systems integral to the manufacturing of electric vehicles ("EVs").

3.      This matter arises from Defendants' failure to maintain internal controls and repeated false statements regarding the "stability" and "visibility" of the demand for Onsemi's SiC and other products, and the sustainability of Onsemi's revenue growth, by overstating the impact of the Company's long-term supply agreements ("LTSAs") on the achievability of its revenue streams.  Throughout Relevant Period, Defendants made and allowed others to make false and misleading statements and failed to disclose material adverse facts about the Company's business and operations.

4.      On May 1, 2023, Onsemi announced its first quarter 2023 results and, during the associated conference call with investors, Defendants spoke extensively about the growth of Onsemi's SiC business.  Defendant El-Khoury touted the fact that Onsemi has "more and more confidence" in its claim that it would reach $1 billion in annual revenue for its SiC products in 2023.  Defendant El-Khoury explained that the Company's outlook was "actually very, very predictable," which was "the benefit that we've been talking about with the LTSAs that have us really, with our customers, align on pricing and volume through the duration of the LTSAs."

5.      On May 16, 2023, Defendants touted that the Company had over $17 billion of LTSAs, $9 billion of which were for SiC products. Defendant Trent emphasized the "really good visibility and tight integration into our customers," and Defendant El-Khoury touted $1 billion in target sales for SiC products in 2023.  Additionally, Defendant El-Khoury emphasized that "[w]e have established a very strong infrastructure and a very strong foundation . . . with the $1 billion in '23 and LTSAs moving forward, and we're going to sustain that."  Defendant El-Khoury added

that, "from the LTSA perspective, our LTSA is . . . multiyear in duration, where both volume and pricing is locked in," effectively guaranteeing that the revenues relating to the LTSAs would be achieved.

6.      Throughout the Relevant Period, Defendants continued to tout the Company's sales of SiC products, particularly to EV manufacturers.  Defendant El-Khoury lauded the Company's LTSAs for the "extended visibility" and the "very, very clear view of where demand is," aiding Defendants in their ability to effectively manage changing macroeconomic conditions and sustain the Company's revenue growth targets.

7.      Defendants consistently disclosed increasing expected revenue figures for every new LTSA the Company had signed with customers and assured investors that the LTSAs built "a more strategic relationship and partnership" with the Company's customers.  Thus, Defendant El-Khoury told investors that, if Onsemi's customers "have . . . softness in their market and they have an LTSA, we're going to get the call 6 months in advance."

8.      Notwithstanding Defendants' assurances, on October 30, 2023, when Onsemi announced its third quarter 2023 financial results, the public began to learn the truth about the purported benefits of the Company's LTSA strategy and the achievability of projected revenue from the Company's products subject to LTSAs.  During the earnings call held that day, Defendant El-Khoury disclosed to investors that the Company was "taking a very cautious approach" with its SiC products due to signs of a weakening demand in the Company's automotive business segment, while also revealing that the Company would miss its $1 billion 2023 SiC revenue target by approximately $200 million.  Defendant El-Khoury claimed that the approximately 20% reduction in the Company's expected SiC revenue was solely attributable to one customer.  Defendant Trent added, however, that the Company expects "greater sequential

declines in industrial and other end markets" as well.

9.      On this news, the price of Onsemi common stock plummeted $18.18 per share, or nearly 22%, from a close of $83.52 per share on October 27, 2023, to close at $65.34 per share on October 30, 2023.

10.     As a result of the foregoing, the Securities Class Action was filed against the Company as well as El-Khoury, Trent and Keeton, exposing Onsemi to massive class-wide liability.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)) and Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9) promulgated thereunder by the SEC and Sections 10(b) and 21D of the Exchange Act (15 U.S.C. §§ 78j(b), 78u-4(f)).

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

13.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

14.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this

District, and Defendants' actions have had an effect in this District.

**PARTIES**

*Plaintiff*

16.     Plaintiff is, and has been at all relevant times, a shareholder of Onsemi.

*Nominal Defendant*

17.     Nominal Defendant Onsemi is incorporated under the laws of Delaware with its principal executive offices located in Arizona.

*The Individual Defendants*

18.     Hasssane El-Khoury has served as a director of Onsemi and as President and Chief Executive Officer of Onsemi and Semiconductor Components Industries, LLC since December 2020.

19.     Alan Campbell has served as a director of Onsemi since August 2015 and as Chair of the Board since May 2017.

20.     Atsushi Abe has served as a director of Onsemi since February 2011.

21.     Paul A. Mascarenas has served as a director of Onsemi since November 2014.

22.     Christine Yan has served as a director of Onsemi since October 2018.

23.     Thomas L. Deitrich has served as a director of Onsemi since October 2020.

24.     Susan K. Carter has served as a director of Onsemi since October 2020.

25.     Gregory Waters has served as a director of Onsemi since December 2020.

26.     Bruce E. Kiddoo has served as a director of Onsemi since December 2020.

27.     Christina Lampe-Önnerud has served as a director of Onsemi since September 2023.

28.     Thad Trent has served as the Executive Vice President, Chief Financial Officer,

and Treasurer of Onsemi since February 2021 and as Principal Accounting Officer of Onsemi since September 2023.

29.     Simon Keeton has served as the Executive Vice President and General Manager of the Power Solutions Group of Onsemi since January 2019.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

30.     By reason of their positions as officers and/or directors of Onsemi, and because of their ability to control the business and corporate affairs of Onsemi, the Individual Defendants owed Onsemi and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Onsemi in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Onsemi and its shareholders so as to benefit all shareholders equally.

31.     Each director and officer of the Company owes to Onsemi and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Onsemi, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

33.     To discharge their duties, the officers and directors of Onsemi were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

34.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good

faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Onsemi, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

35.    As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the Nasdaq, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

36.    To discharge their duties, the officers and directors of Onsemi were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Onsemi were required to, among other things:

(a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the

United States, and pursuant to Onsemi's own Code of Business Conduct
(the "Code of Conduct");

(b) conduct the affairs of the Company in an efficient, business-like manner
so as to make it possible to provide the highest quality performance of its
business, to avoid wasting the Company's assets, and to maximize the
value of the Company's stock;

(c) remain informed as to how Onsemi conducted its operations, and, upon
receipt of notice or information of imprudent or unsound conditions or
practices, to make reasonable inquiry in connection therewith, and to take
steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the
business and internal affairs of Onsemi and procedures for the reporting of
the business and internal affairs to the Board and to periodically
investigate, or cause independent investigation to be made of, said reports
and records;

(e) maintain and implement an adequate and functioning system of internal
legal, financial, and management controls, such that Onsemi's operations
would comply with all applicable laws and Onsemi's financial statements
and regulatory filings filed with the SEC and disseminated to the public
and the Company's shareholders would be accurate;

(f) exercise reasonable control and supervision over the public statements
made by the Company's officers and employees and any other reports or
information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

37.     Each of the Individual Defendants further owed to Onsemi and the shareholders the duty of loyalty requiring that each favor Onsemi's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

38.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Onsemi and were at all times acting within the course and scope of such agency.

39.     Because of their advisory, executive, managerial, and directorial positions with Onsemi, each of the Individual Defendants had access to adverse, non-public information about the Company.

40.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Onsemi.

41.     The Individual Defendants, because of their positions with Onsemi, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their

issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

### ONSEMI'S CODE OF BUSINESS CONDUCT AND ETHICS

42.     Onsemi's Code of Conduct expressly applies to all of the Individual Defendants. The Code of Conduct states that:

> Our Company records form the basis for our financial reports and other public disclosures. Therefore, honest and accurate recording and reporting of information is crucial to making responsible business decisions. This includes business data, such as quality, safety and personnel records, as well as all financial records. As a public company, it is essential that the information we submit in our Company records is complete, timely, accurate and understandable. Incomplete or untimely records can damage our Company's reputation and subject ON Semiconductor and the individuals involved to legal liability.

> All of our financial books, records and accounts must accurately reflect transactions and events. We must never make false or artificial entries. Further, we must always follow required accounting principles, as well as our Company's internal controls. For example, when a payment is made, it can only be used for the purpose spelled out in the supporting document. If you suspect any accounting or auditing irregularities or fraud, you should report them immediately.

> ***

> At times, we may be called upon to provide information for our public reports. Our Company expects us to take this responsibility very seriously. In doing so, we must provide prompt and accurate answers to inquiries related to our public disclosure requirements.

> ***

> The Finance Department, certain Company officers and the directors of ON Semiconductor have a special responsibility to promote integrity within our Company. They are expected to ensure the accuracy and completeness of the public disclosures our Company provides. Because of this special role, the

following individuals are required to know and understand the financial disclosure laws that apply to their work:

- Each member of the Board of Directors

- The principal executive officer

- The principal financial officer

- The principal accounting officer or controller, or persons performing similar functions

- Each member of the Finance Department of ON Semiconductor Corporation and each of its subsidiaries

43.    The Code of Conduct states further that "[t]hrough our work at ON Semiconductor, we may come across information about our Company or another publicly traded company that is considered inside information," adding that "[w]e are not allowed to trade in securities or similar investments based on inside information [and] [d]oing so is called "insider trading," and is against the laws of many countries in which we do business."

## ONSEMI'S AUDIT COMMITTEE CHARTER

44.    Pursuant to Onsemi's Audit Committee Charter, the Audit Committee has *inter alia* the following responsibilities:

> To review and discuss with management and the Independent Auditor the annual audited financial statements (including the related notes), the form of audit opinion to be issued by the Independent Auditor on the financial statements and disclosures made in management's discussion and analysis ("MD&A"), and other applicable SEC and Public Company Accounting Oversight Board requirements, and to recommend to the Board whether the audited financial statements should be included in the Company's Annual Report on Form 10-K.

> To review and discuss with management and the Independent Auditor the Company's quarterly financial statements prior to the filing of its Quarterly Reports on Form 10-Q, including the results of the Independent Auditor's limited review of the quarterly financial statements and the MD&A contained therein.

> To review and discuss with management and the Independent Auditor: (i) any

11

significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements; and (ii) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements.

To review and discuss with management: (i) the Company's disclosure controls and procedures; (ii) management's conclusions about the efficacy of such disclosure controls and procedures, including (A) any significant deficiencies in, material non-compliance with or material weakness in respect of, such controls and procedures, (B) any disclosures made to the Committee by the Company's Chief Executive Officer and Chief Financial Officer during their certification process for Forms 10-K and 10-Q, and/or (C) any fraud involving management or other employees who have a significant role in the Company's internal controls; and (iii) any significant change in internal controls implemented by management during the most recent reporting period.

To review and discuss with management and the Independent Auditor management's annual internal control report, including any attestation of the same by the Independent Auditor.

Pursuant to the Exchange Act, to establish procedures for: (i) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters; and (ii) the confidential, anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters.

To review and oversee related party transactions, as and to the extent required under applicable securities laws, rules and regulations and the Nasdaq Marketplace Rules.

To periodically review the Company's investment policy and related practices and obtain reports on the resulting performance of the Company's investments.

To review and provide guidance and recommendations to the Board regarding major financial risk exposures and risk management policies

***

To obtain reports from management, the Company's head of the Internal Audit Function, the General Counsel and other appropriate members of the Law Department, as appropriate, with respect to: (i) any known material non-compliance with applicable legal requirements by the Company or material reports or inquiries by governmental agencies or regulators regarding such matters; (ii) other legal and regulatory matters that may have a material impact on the Company's financial statements or compliance policies; and

(iii) the effectiveness of the Company's legal compliance policies and programs.

To oversee and discuss with management the Company's cybersecurity posture, risk assessment, strategy and mitigation and make recommendations as to how to address and resolve any breaches or issues related to the protection or privacy of the Company's data.

\*\*\*

To review and oversee the Company's Ethics Program.

To review the Company's Enterprise Risk Management Program and provide guidance and recommendations to the Board regarding its risk oversight responsibilities.

## SUBSTANTIVE ALLEGATIONS

45.     Onsemi sells semiconductor components for various electronic devices worldwide and serves original equipment manufacturers ("OEMs"), distributors, and electronic manufacturing service providers.

46.     Onsemi operates in three segments: Power Solutions Group ("PSG"), Advanced Solutions Group ("ASG"), and Intelligent Sensing Group ("ISG").  The ISG segment offers metal oxide semiconductors image sensors; proximity sensors; image signal processors; radars; and actuator drivers for autofocus and image stabilization for a range of customers in automotive, industrial, medical, aerospace/defense, communications, networking, wireless, consumer, and computing markets.

47.     On October 28, 2021, prior to the start of the Relevant Period, Onsemi acquired GT Advanced Technologies Inc. ("GTAT")—a SiC producer. SiC is a key material for semiconductors that provide technical benefits in SiC power switching devices, significantly improving system efficiency in EVs, EV charging, and energy infrastructure.

48.     On May 1, 2023, the beginning of the Relevant Period, Onsemi released its first quarter 2023 earnings and held the accompanying investor earnings call.  During that call,

Defendant El-Khoury spoke extensively on the growth of Onsemi's SiC business and touted the fact that the Company has "more and more confidence" in its claim that the Company would reach $1 billion in annual revenue for its SiC products in 2023.  Specifically, Defendant El-Khoury explained that the Company's outlook was "actually very, very predictable," which was "the benefit that we've been talking about with the LTSAs that have us really, with our customers, align on pricing and volume through the duration of the LTSAs."

49.     Two weeks later, at the Company's Financial Analyst Day held on May 16, 2023, Defendants El-Khoury, Trent, and Keeton, as well as other Onsemi management, presented on, among other things, the Company's products, business plan, and financial performance. Defendant Keeton focused his presentation on the Company's SiC products and discussed the Company's "confiden[ce] on the path to the first $1 billion in [SiC]."  Specifically, Defendant Keeton remarked that Onsemi has "LTSAs with literally hundreds of devices on a single LTSA for a single customer" and that "[t]he onsemi manufacturing machine is firing on all cylinders."

50.     Moreover, in praising Onsemi's "160% annual growth rate for the past 2 years and this year," Defendant Keeton noted that the Company's "extremely high growth [was] driven by customer wins and LTSAs with optimized solutions."   In finishing his prepared remarks, Defendant Keeton stated that his presentation was "[a] lot of talk, but actions speak louder than words and our customer actions prove that we have value with $9 billion of [SiC] LTSAs in electrification and energy infrastructure" over the next three to five years.

51.     During the presentation, Defendant Trent discussed the Company's recent financial performance and similarly touted that the Company's LTSAs provide Onsemi with "really good visibility and tight integration into our customers on how do we align with them." In discussing Onsemi's product mix, Defendant Trent further stated that, "last quarter, 79% of

our business was auto and industrial" and that "over the time horizon, you're looking at auto and industrial being north of 85% of the total company."

52.     During the question-and-answer portion of the presentation, an analyst inquired about the Company's $1 billion SiC target for 2023 and the competitive landscape for SiC over the next several years, to which Defendant El-Khoury responded by reassuring investors that the Company's growth is "supported by the LTSAs, which extend through that period of time" and that "[w]e have established a very strong infrastructure and a very strong foundation . . . with the $1 billion in '23 and LTSAs moving forward, and we're going to sustain that."  Defendant El-Khoury further unequivocally stated that "from the LTSA perspective, our LTSA is . . . multiyear in duration, where both volume and pricing is locked in," effectively guaranteeing that the revenues relating to the LTSAs would be achieved.  Additionally, Defendant El-Khoury rejected the prospect presented by an analyst with Truist Securities, Inc. that Onsemi would see any "meaningful correction on the path to 2027," and reassured investors that "we're going to manage very, very tightly agnostic of where we are in up or down years from an industry perspective, we're going to use [SiC inventory] as a tool for our own business as we want to run it and as we see it with the LTSAs, which is a very, very clear view of where demand is."

53.     The following week, on May 23, 2023, Defendants El-Khoury and Trent presented at an industry conference hosted by JPMorgan Chase & Co.  During the presentation, Defendant El-Khoury attributed the Company's "very good position" to "solid LTSA or revenue committed by customer[s]," and claimed that "[o]ur strategy is solid" and "has been stressed with the macro environment, and it's sustainable."  Defendant El-Khoury also reiterated that the current LTSA commitment "is at a $9 billion lifetime revenue for [SiC]."

54.     On July 31, 2023, Onsemi held its investor earnings call for the second quarter of

2023.  During the call, Defendant El-Khoury praised the Company for "sign[ing] more than $3 billion of new [SiC] LTSAs" and raising the Company's committed SiC revenue to "over $11 billion."  Defendant El-Khoury also continued to tout the benefit of Onsemi's LTSAs in providing "extended visibility" and "stability in pricing and volume commitments."

55.     When analysts questioned the strength of the automotive and industrial markets because, according to Defendant El-Khoury, the Company's SiC LTSA mix is "[a]bout 90% [in] auto, about 10% [in] industrial," Defendant El-Khoury reassured investors that the automotive and industrial markets remain "healthy" and that the "strength in these markets is sustained."

56.     On August 30, 2023, Defendants El-Khoury and Trent attended an industry conference hosted by Deutsche Bank AG.  In response to the host's question about the current demand environment for Onsemi's business segments, Defendant El-Khoury emphasized that Onsemi "designed our own soft landing" by actively managing the Company's inventory and reducing its manufacturing utilization, making Onsemi's yearly outlook "very predictable." Defendant Trent followed-up these comments by declaring that Onsemi's automotive and industrial segments are "steady" and "strong."  Critically, Defendant El-Khoury revealed that, even in a softer market, Onsemi is "in a much better position with the visibility of our business than a lot of our peers" because, if Onsemi's customers "have . . . softness in their market and they have an LTSA, we're going to get the call 6 months in advance."

57.     The following week, on September 7, 2023, Defendants El-Khoury and Trent attended an industry conference hosted by Citigroup Inc.  During the presentation, the host inquired as to why the "downturn is hitting everybody else, why isn't [it] hitting [onsemi]?" Defendant Trent responded that "the LTSA coverage that we have is actually protecting us and we're building the LTSAs."

16

58.     During the presentation, Defendant El-Khoury similarly highlighted the Company's greater visibility into customer demand than Onsemi's competitors, touting that "[w]e pegged it to LTSAs" and that, "given that most of our business is under LTSA, we're getting that visibility."  Defendant El-Khoury further explained the visibility and stability benefits of LTSAs:

> If I get one thing from the LTSA, I'm going to get a phone call, as soon as the customer sees softness.  That's it.  I want a phone call because that's the conversation I want to have.  Historically, backlog disappeared 30 days before I ship it, and you're left holding the bag. So [with] the LTSAs, somebody is going to get the bat phone and call and say, we got a problem, 6 months, 9 months from now, let's have a conversation.  So we'll have the conversation, but it has to be a win-win.

59.     The above were materially false and misleading and failed to disclose material adverse facts about the Company's business and operations.   Specifically, Defendants misrepresented that: (1) revenues from billions of dollars in reported LTSAs were "committed" and "locked in," and were effectively certain to be obtained by the Company when, in fact, the Company could and would abrogate the LTSAs at a customer's request; (2) LTSAs provided "predictable" and "sustainable" performance to drive the Company's growth, even in tough macroeconomic conditions, when, in fact, they would be modified or eliminated as conditions changed; and (3) Defendants had "good visibility" into customer demand when, in fact, demand could be reduced on short notice, even where LTSAs were in effect.  As a result of the foregoing, Defendants' positive statements about Onsemi's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

60.     On October 30, 2023, investors learned the truth about the purported benefits of the Company's LTSA strategy and the achievability of projected revenue from the Company's products subject to LTSAs, when Onsemi announced its third quarter 2023 financial results. During the accompanying investor earnings call held that same day, Defendant El-Khoury, in his opening remarks, revealed that Onsemi would miss its $1 billion SiC 2023 revenue target by

approximately $200 million—roughly 20% of the Company's expected SiC revenue for the year—due to "a single automotive OEM's recent reduction in demand."

61.     Likewise, Defendant Trent disclosed to investors that, despite previous statements that Onsemi's LTSAs provided visibility into customer demand and effectively guaranteed revenue for the Company, it now expected "a mid-single digit decline in automotive given the softness in Europe that [Defendant El-Khoury] described, with greater sequential declines in industrial and other end markets."  Defendant Trent explained that the LTSAs were not as "locked in" as the Company had touted because "we are allowing some pushouts as long as there's a win-win for both companies in that situation" and "[w]e don't want to overship natural demand." Defendant El-Khoury further expanded:

> I will comment on the LTSAs.  So the LTSAs are legally binding.  Therefore, for us to agree or even acknowledge that pushout or even the demand in general, outside of [SiC] in Q4, there has to have been, which there is, a win-win for us and the customer.  We've always said, if anything, the LTSAs give us a phone call.  We get the phone call way ahead of time in certain areas when the customer knows that it's coming.  And we're able to manage with the customer for a win-win, whether that win-win is a quarter later or a year later or a longer term that depends on case by case.  So we manage it with the customer because what we don't want is, of course, enforce the LTSA at the expense of just shipping inventory if demand is lower.  So we take it very cautiously.

62.     Notwithstanding the claim that LTSAs would only be modified in the event of a "win-win," analysts understood that the SiC reduction in its expectations for the fourth quarter revealed the true state of affairs—that LTSAs did not provide the type of "locked[-]in" revenue stream the Company had touted.  BofA Securities put it bluntly regarding the basis for the Company's stock valuation: "[b]y guiding down Q4 [onsemi] has created doubts about the durability of its [SiC LTSAs], a key part of the bull thesis."  UBS Securities LLC likewise noted that "[t]he bloom is 'off the rose' with respect to [onsemi]'s [LTSAs]" and that it was "cutting [their] C2024 [earnings per share]," while Goldman Sachs & Co. LLC concluded that the

disclosure "brings into question . . . the viability of LTSAs."

63.    Similarly, analysts with TD Cowen opined that "[w]e think the stock's - 22%reaction today is due to . . . an injection of uncertainty in its SiC business which was viewed as having a clear growth trajectory covered by LTSAs."  Analysts at William Blair & Company, L.L.C. also addressed the disclosure regarding the failure of the LTSAs in detail, noting that:

> What Happened to LTSAs?  The management team has been very confident
> in its LTSA strategy providing visibility and preventing demand surprises.
> We have questioned the efficacy of these LTSAs when push comes to shove,
> because if your customer cannot use the product, it is bad business to make
> them take it, and even worse business to sue your customer over contract
> fulfillment.  We have seen "iron-clad" LTSAs fall apart in cyclical downturns
> . . . . If an LTSA with Tesla is fallible, how should investors interpret the
> LTSAs with four of the top five Chinese EV players?

64.    On this news, the price of Onsemi common stock plummeted $18.18 per share, or nearly 22%, from a close of $83.52 per share on October 27, 2023, to close at $65.34 per share on October 30, 2023.

## HARM TO THE COMPANY

65.    As a direct and proximate result of the Individual Defendants' misconduct outlined herein, the Company has lost and expended, and will continue to lose and expend, millions of dollars.

66.    During the Relevant Period, Onsemi's market capitalization value reached a high of $46.6 billion on August 1, 2023, before falling to $28.2 billion on October 30, 2023.

67.    These costs include, *inter alia*: (i) legal fees in connection with the Securities Class Action, including attorneys', accountants', experts', and investigators' fees; (ii) costs to implement measures to remedy the material weaknesses in Onsemi's internal controls over financial reporting; and (iii) substantial compensation and benefits paid to the Individual Defendants, who breached their fiduciary duties to the Company.

19

68.     Defendants also made illegal insider sales of Company stock at artificially inflated prices as a result of the false and misleading statements detailed herein.

69.     As a direct and proximate result of the Individual Defendants' misconduct and breach of fiduciary duties, the Company has also suffered and will continue to suffer a loss of reputation and goodwill, and a liar's discount regarding Onsemi's stock in the future.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

70.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

71.     Onsemi is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

72.     Plaintiff is a current shareholder of Onsemi and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

73.     At the time this action was commenced, the ten-member Board was comprised of Defendants Campbell, El-Khoury, Abe, Mascarenas, Yan, Deitrich, Carter, Waters, Kiddoo, and Lampe-Önnerud (collectively, the "Director Defendants").  Accordingly, Plaintiff is only required to show that five members of the current Board (the "Demand Board") cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

74.     The Company's definitive proxy statement, filed with the SEC on April 6, 2023, concedes El-Khoury is not independent. *See* page 14.  Accordingly, Plaintiff need only show

demand is futile as to four of the remaining nine members of the Demand Board.

75.     Each of the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

76.     The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Director Defendants authorized and/or permitted the Company to violate the law, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

77.     The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

78.     As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Onsemi, the Director Defendants knew, or should have known, the material facts surrounding Onsemi's compliance with campaign finance and securities laws, and the accuracy of its public statements.

79.     Campbell, Abe, Mascarenas, Yan, Deitrich, and Carter also served the Board that appointed El-Khoury as Company President and CEO, simultaneously with the appointment of Waters and Kiddoo.

80.     Demand in this case is excused because each of the directors derive hundreds of thousands of dollars annually from the Company, control the Company, and are indebted to each other. These and other conflicts of interest have precluded the current directors from calling into question the Director Defendants' conduct or taking any remedial actions to redress the conduct alleged herein. Accordingly, the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action due to their close relationship with, and indebtedness to, the Director Defendants named herein.

81.     All of the Director Defendants are subject to the Company's Code of Conduct.  The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the members of the Demand Board to also adhere to Onsemi's of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly allowed the Company to violate the law.  All of the Director Defendants violated the Code of Conduct, including by refusing to take action to address the misconduct alleged herein. As such, the entire Demand Board faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

82.     None of the Director Defendants have taken any remedial action to investigate or redress the Company's losses and exposure due to their and the other Individual Defendants' misconduct.

83.     The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers'

liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of Onsemi. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Onsemi, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

84.     If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Onsemi to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

85.     Accordingly, a pre-suit demand on the current Board comprised of the Director Defendants is futile and excused.

## COUNT I

**Against Defendants El-Khoury, Trent and Keeton for Contribution Under §10(b) and 21D of the Exchange Act**

86.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87.     The conduct of Defendants El-Khoury, Trent and Keeton, as described herein, has exposed the Company to significant liability under various federal securities laws by their

misconduct.

88.   Onsemi, El-Khoury, Trent and Keeton are named as defendants in the related Securities Class Action that alleges and asserts claims arising under the federal securities laws. Onsemi is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

89.   If Onsemi is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants El-Khoury, Trent and Keeton as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

90.   As officers and directors, Defendants El-Khoury, Trent and Keeton had the power or ability to, and did, control or influence, either directly or indirectly, Onsemi's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

91.   The Individual Defendants are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

92.   Defendants El-Khoury, Trent and Keeton have damaged the Company and are liable to the Company for contribution.

93.   As such, Onsemi is entitled to receive all appropriate contribution or indemnification from Defendants El-Khoury, Trent and Keeton.

## COUNT II

**Against the Individual Defendants for Breach of Fiduciary Duty**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     The Individual Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

96.     The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

97.     The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

98.     Specifically, throughout Relevant Period, the Individual Defendants issued false and misleading statements failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants made false statements *inter alia* regarding the "stability" and "visibility" of the demand for Onsemi's SiC and other products, and the sustainability of Onsemi's revenue growth, by overstating the impact of the Company's LTSAs on the

achievability of its revenue streams.

99.     As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

100.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.  As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT III

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

101.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.     By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

103.     Plaintiff on behalf of Onsemi has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Unjust Enrichment

104.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Onsemi.

106.     The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Onsemi that were tied to the performance or artificially inflated valuation of Onsemi, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

107.     Plaintiff, as a shareholder and a representative of Onsemi, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

108.     Plaintiff on behalf of Onsemi has no adequate remedy at law.

## COUNT V

### Against the Individual Defendants for Abuse of Control

109.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.     The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

111.     As a direct and proximate cause of the Individual Defendants' abuse of control,

the Company has sustained substantial damages.

112.   Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VI

### Against the Individual Defendants for Gross Mismanagement

113.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.   The Individual Defendants, either directly or through aiding and abetting, failed to reasonably exercise their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the expectations and operations of a publicly held corporation.

115.   As a direct and proximate result of the Individual Defendants' gross mismanagement alleged herein, the Company has sustained and will continue to sustain substantial damages.

116.   Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VII

### Against the Individual Defendants for Waste of Corporate Assets

117.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

118.   The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

119.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and

(ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

120.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

121.    Plaintiff on behalf Onsemi has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: January 3, 2024

**RIGRODSKY LAW, P.A.**

By: */s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Counsel for Plaintiff*

Of Counsel:

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:  267-507-6085
Email: jgrabar@grabarlaw.com